IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMOS DUMARCE,<br><br>           Plaintiff,<br><br>vs.<br><br>NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, MICHELLE WILHELM, Warden; JESSICA RHOADES, CPL.; and KIMBERLY MCGILL, Correctional Administrator;<br><br>           Defendants. | 4:23CV3132<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff Amos Dumarce's ("Plaintiff") Complaint, Filing No. 1, filed on July 20, 2023. Plaintiff has been given leave to proceed in forma pauperis. Filing No. 7. The Court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A. In conducting this review, the Court will consider the "brief" filed by Plaintiff on July 19, 2024, as a supplement to the Complaint (hereinafter the "Supplement"). Filing No. 8.

**I. SUMMARY OF COMPLAINT**

Plaintiff is an inmate currently confined in the Nebraska Department of Correctional Services ("NDCS") at the Nebraska State Penitentiary ("NSP") in Lincoln, Nebraska. Plaintiff sues NSP Warden Michelle Wilhelm ("Wilhelm"), Correctional Administrator Kimberly McGill ("McGill"), Cpl. Jessica Rhoades ("Rhoades"), and, liberally construed, Cpl. Howard-Wilson ("Howard-Wilson")[1] (collectively "Defendants") in their official and

---

[1] Howard-Wilson is listed in the body of Plaintiff's Supplement, which Plaintiff "submitted as part of [his] original pleading filed on July 21, 2023." Filing No. 8 at 1. Though not listed in the caption of the Complaint,

individual capacities for alleged violations of his First, Eighth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 relating to the cancellation of Plaintiff's family visits and suspension of Plaintiff's girlfriend's and mother's visiting privileges. Filing No. 1 at 1; Filing No. 8 at 1–2, 4.

On April 1, 2023, Plaintiff's girlfriend, Titeeanna Worthington ("Worthington"), came with her and Plaintiff's daughter to NSP to visit Plaintiff. Rhoades was working as the visitation pass clerk and told Worthington that she could not wear leggings and must change her pants. Filing No. 1 at 3, 20. Worthington left and returned fifteen minutes later after she had changed her clothes. Rhoades then searched Worthington and her daughter by having them remove their shoes and pass through a metal detector, and she opened and searched the roll of quarters Worthington had brought in for the visit. Rhoades then moved Worthington and her daughter to the search room, and, while Worthington was shaking out her undergarment, Rhoades stated that she "smelled marijuana" and the visit was cancelled. *Id.* at 3. Worthington had been sitting in the lobby for over 40 minutes before Rhoades made the statement that she smelled like marijuana. *Id.* Worthington asked to "speak to someone higher up," and another officer came and spoke with Worthington. *Id.* Though the other officer denied smelling marijuana on Worthington, he "stated there's nothing he could do about it because Cpl. Rhoades has already terminated the visit." *Id.* (punctuation corrected). Thereafter, Worthington reached out to Correctional Administrator McGill to discuss the matter but "was met with

---

Filing No. 1, or Supplement, Filing No. 8, the Court will consider Howard-Wilson as a defendant in this case. *See Miller v. Hedrick*, 140 Fed. App'x 640, 641 (8th Cir. 2005) (citing *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) ("[A] party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant.")). In contrast, the Court will not consider Rob Jeffreys, who Plaintiff named in the caption of his Supplement, *see* Filing No. 8 at 1, as a defendant as there are no allegations relating to Jeffreys in Plaintiff's pleadings.

negative results" in that McGill never returned Worthington's phone calls. *Id*. at 3, 21. Worthington was able to visit Plaintiff two other times in April 2023 without issue on dates that Rhoades was not working.

On May 7, 2023, Plaintiff's mother, Marcella Dumarce ("Dumarce"), Worthington, and Plaintiff's minor daughter (collectively "Plaintiff's family") came to visit Plaintiff at the NSP. Rhoades was working that day and told Dumarce that she could not wear her "head wrap" and had to change her shirt. *Id*. at 3. Plaintiff's family exited the facility so Dumarce could change. Upon reentry, Plaintiff's family passed through the metal detectors, and Rhoades told Worthington that she could not wear the pants she had on so Worthington again exited the facility to change her pants while Dumarce stayed inside with the daughter. *Id*. at 4. Worthington returned, was given a locker key, and then all three were escorted to a room to be searched by Officer Wilkinson ("Wilkinson"). *Id*. Wilkinson completed the search without incident, and Plaintiff's family exited the room and sat in chairs, waiting to be escorted to the visiting room. *Id*. at 4, 21. Rhoades walked out from behind a desk and stood next to Dumarce while Dumarce was putting on her shoes, which had been removed during the search. "About 20 seconds later, Cpl. Rhoades says she smells 'marijuana'" coming from Dumarce's shoes, and she cancelled the visit. *Id*. at 4, 22. Both Worthington and Dumarce objected to Rhoades' accusation, and Worthington told Rhoades she felt Rhoades was biased against her and asked to speak with a superior. *Id*. at 4, 22. Rhoades stated that there was "no one else to talk with, then calls another Officer to escort Plaintiff's family out of the facility." *Id*. at 4 (punctuation corrected). Plaintiff's family asked that their personal property and I.D.s be returned, but Rhoades "demand[ed] the family to leave without returning the property." *Id*. Dumarce

3

again attempted to have the I.D.s returned from Rhoades, and Rhoades "slamm[ed] the I.D. onto the desk." Id.  Fearing that Rhoades would also slam her ring on the desk and damage it, Worthington grabbed the ring from Rhoades, and "Rhoades state[d] that she was 'assaulted.'" Id.  Plaintiff's family then left the facility.

Worthington and Dumarce attempted to contact McGill to file a complaint. However, before receiving any contact from McGill, both Dumarce and Worthington received a letter from McGill dated May 9, 2023, indicating that Dumarce's visits were suspended for 90 days and Worthington's visits were suspended for one year for their "disrespectful and disruptive behavior . . . displayed to staff on May 7, 2023." Id. at 29; see also Id. at 4–5, 28.  Plaintiff filed a grievance regarding the suspension of his family's visits and received the following in response to his Step Two "Central Office Appeal":

> The suspension of your visitor is not a sanction from a misconduct report but a separate process.  Policy 205.02, Section VII, Paragraph B states, in part, "The Warden of the facility may suspend the visiting privileges of the visitor.  Suspensions shall be in accordance with NDCS Visiting Restriction Guidelines.  Based on the severity of the incident, the Warden has the discretion to suspend visitation on the first offense for all rules violated (attached exclusions may range from denial of visiting for the day, suspension of visiting for a specified period, or indefinite removal from the approved visiting list).

Id. at 30.

Plaintiff alleges Dumarce has had visitation with his brother at another NDCS facility and "there has never been any incident with the staff concerning the manner in which she has conducted herself." Id. at 5.  Plaintiff also alleges that he has had visits with Worthington and "had no problems," and, out of four visits he has had at the NSP, only two of them were cancelled "when Cpl. Rhoades is the 'Pass Clerk' for visitation on the scheduled days." Id.

In his supplemental filing, Plaintiff describes another visit with Dumarce on March 14, 2024, in which Dumarce and Plaintiff's daughter were "subjected to unprofessional conduct by NSP Staff Cpl. Howard[-]Wilson." Filing No. 8 at 2. While waiting in the NSP lobby to visit Plaintiff, Dumarce had to take Plaintiff's daughter to use the restroom. Upon exiting the restroom, they were met by Howard-Wilson who directed Dumarce to follow Howard-Wilson into a partition. *Id*. at 9, 20. Howard-Wilson then instructed Dumarce to take her hair down from her ponytail, and Dumarce asked why she needed to since she had not been asked to do that upon her initial screening into the facility. *Id*. at 9, 20. Howard-Wilson called for another officer who told Dumarce she needed to comply, and Dumarce did so, removing her ponytail. *Id*. at 9, 20. Howard-Wilson then directs Dumarce to lift her shirt and "pick up" her bra, and Dumarce complied, though she had not been asked to do so in previous pat downs and she felt uncomfortable since she believed Howard-Wilson to be a man. *Id*. at 9–10, 14–15, 20. Dumarce asked for Howard-Wilson's name, and, at that point, Howard-Wilson identified herself as a female. *Id*. at 10. Dumarce was then permitted to proceed with her visit with Plaintiff, and she told Plaintiff about what happened. Plaintiff voiced his concerns about Howard-Wilson's actions to Howard-Wilson and another NSP staff member as being against NDCS rules regarding a "pat down" search and obtained information for Dumarce to make a complaint about Howard-Wilson. *Id*. at 14, 21. Plaintiff's visit with Dumarce was not terminated, and Dumarce was allowed to leave on her own at the visit's end. *Id*. at 18. Shortly thereafter, Dumarce's visits were suspended for a year until March 19, 2025, for being non-compliant with a search. *Id*. at 13, 18.

As relief, Plaintiff seeks damages for the loss of family visitation, his family's transportation costs to Lincoln from Omaha, Nebraska, and for the harm caused by the defendants' denial of his due process rights and their infliction of cruel and unusual punishment. Filing No. 1 at 7.

## II.  APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A.  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  However, "[a] pro se complaint must be liberally construed, and

pro se litigants are held to a lesser pleading standard than other parties." Topchian, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

### III.  ANALYSIS OF CLAIMS

### A.  Sovereign Immunity

Plaintiff sues Defendants in their official and individual capacities for damages. See Filing No. 8 at 4. Plaintiff also named NDCS as a defendant in the caption of his Complaint, Filing No. 1 at 1, but states or governmental entities that are considered arms of the state are not suable "persons" within the meaning of 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989). Also, the Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities and an employee of a state sued in the employee's official capacity. See, e.g., Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995); Dover Elevator Co. v. Ark. State Univ., 64 F.3d 442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. See, e.g., Dover Elevator Co., 64 F.3d at 444; Nevels v. Hanlon, 656 F.2d 372, 377–78 (8th Cir. 1981). Thus, to the extent Plaintiff seeks monetary relief from NDCS

7

and Defendants in their official capacities, his claims are barred by sovereign immunity and must be dismissed.

Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, so the Court will review Plaintiff's pleadings to determine if he has alleged a plausible claim for relief against Defendants in their individual capacities.

**B. Standing**

As an initial matter, to the extent Plaintiff may be attempting to assert any claims on behalf of Worthington, Dumarce, or his daughter, he lacks standing to do so. "Courts have held that it is a 'well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else.'" *Burgess v. City of Sioux Falls*, No. CIV 17-4027, 2018 WL 2305668, at *6 (D.S.D. May 21, 2018) (quoting *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (holding that son had no liberty interest to be free of emotional trauma suffered from observing allegedly excessive police force which was directed entirely at his father)); *see also Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner lacked standing to seek an injunction against mistreatment of other prisoners). Thus, to the extent Plaintiff seeks relief based on the violation of his family's constitutional rights, such claims must be dismissed.

However, as Plaintiff alleges deprivations of his own First, Eighth, and Fourteenth Amendment rights and injuries as a result, Plaintiff has standing to pursue relief in his own right.

**C. Loss of Visitation**

In his Complaint and Supplement, Plaintiff primarily asserts a violation of his due process rights based on NDCS' creation of a protected liberty interest in prisoner visitation through the use of "explicitly mandatory language in connection with the establishment of specific substantive predicates to limit official discretion" in NDCS rules and regulations related to inmate visits. Filing No. 1 at 6. Plaintiff contends that, because he has a liberty interest in visits with his family, Defendants' cancellation and suspension of his visits with his family without a hearing deprived him of due process. Liberally construed, Plaintiff also alleges the loss of his family visits constituted cruel and unusual punishment in violation of the Eighth Amendment and a violation of his right to intimate association under the First Amendment. See Filing No. 1 at 1, 7; Filing No. 8 at 6.

The Court first notes that Plaintiff's reliance on the language of NDCS rules and regulations to establish his due process liberty interest is faulty. Prior to the Supreme Court's . . . decision in Sandin v. Conner, 515 U.S. 472 . . . (1995), the determination of whether state law created a protected liberty interest required a close examination of the language of the state statute or regulation itself." Temple v. Dahm, 905 F. Supp. 670, 673 (D. Neb. 1995) (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 461 (1989)). In Sandin v. Conner, the Court held that states may create liberty interests that afford prisoners due process protections, but explained:

> [T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

515 U.S. at 484 (internal citations omitted). Thus, after *Sandin*, courts are no longer required to engage in "the search for a negative implication from mandatory language in prisoner regulations," *Id*. at 483, and the language of NDCS' prisoner visitation regulations is not determinative of whether Plaintiff has a state-created liberty interest protected by the Due Process Clause.

However, both the Supreme Court and the Eighth Circuit have recognized a limited right for prisoners to associate with their families, *see Overton v. Bazzetta*, 539 U.S. 126, 131 (2003); *Manning v. Ryan*, 13 F.4th 705, 708 (8th Cir. 2021), and limitations on that right must be "reasonably related to legitimate penological interests," *Manning*, 13 F.4th at 708 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In *Overton*, the Supreme Court noted that limitations on familial visitation privileges for prisoners may be unconstitutional if imposed permanently or "in an arbitrary manner to a particular inmate," but limitations on visitation privileges do not violate the Constitution if imposed "for a limited period as a regular means of effecting prison discipline." *Overton*, 539 U.S. at 137. In *Manning*, the Eighth Circuit relied on *Overton* and held that "prison officials who permanently or arbitrarily deny an inmate visits with family members . . . have acted in violation of the Constitution." *Manning*, 13 F.4th at 703.

Here, Plaintiff alleges Rhoades cancelled two of his family's visits in April and May of 2023 for the stated reason that she smelled marijuana, but no other officers who came into contact with Plaintiff's family during those two visits reported the smell of marijuana and Plaintiff's family had been in Rhoades' presence for at least thirty minutes prior to Rhoades' reporting the smell. Plaintiff also alleges that his family had been able to visit him on other occasions prior to May 2023 without incident, and it was only when Rhoades

10

was working as the visitation pass clerk that his visits were cancelled. Plaintiff alleges Rhoades displayed "bias[ and] negative with arbitrary and capricious actions" towards Plaintiff and his family. Filing No. 1 at 5. Reading Plaintiff's pleadings liberally, Plaintiff alleges Wilhelm, as warden of the NSP, and McGill suspended Plaintiff's visitation with Worthington and Dumarce based solely on Rhoades' arbitrary actions, without offering Plaintiff any notice or hearing prior to the suspensions. *See Id*. at 30 (noting Warden of the facility makes the decision to suspend a visitor's visiting privileges); *see also Id*. at 28–29 (letters from McGill suspending Worthington's and Dumarce's visiting privileges). Taking Plaintiff's factual allegations as true, and given the liberal construction afforded to pro se litigants' pleadings, the Court finds Plaintiff has stated plausible First, Eighth, and Fourteenth Amendment claims for relief under *Manning* against Rhoades, Wilhelm, and McGill in their individual capacities.

Similarly, the Court concludes Plaintiff has alleged sufficient facts, for the purposes of initial review, for his First, Eighth, and Fourteenth Amendment claims to proceed against Howard-Wilson. Liberally construed, Plaintiff alleges Howard-Wilson reported that Plaintiff's mother, Dumarce, was non-compliant with a search during the course of her visit with Plaintiff on March 14, 2024, leading to Dumarce's visitation privileges being suspended for a year. However, Plaintiff alleges Howard-Wilson permitted Dumarce to complete her visit with Plaintiff on March 14, despite her alleged non-compliance with Howard-Wilson's search, and it was only after Plaintiff raised concerns about Howard-Wilson's conduct in searching Dumarce that his visits with Dumarce were suspended. Giving Plaintiff's allegations their most liberal construction, Plaintiff's allegations suggest

that the suspension of his visits with Dumarce was arbitrary, and the Court will permit Plaintiff's claims to proceed against Howard-Wilson in her individual capacity.

## IV.  REQUEST FOR COUNSEL

In his Complaint, Plaintiff included a request for the appointment of counsel. Filing No. 1 at 7. "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).  A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011).  "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)).

This is a relatively straightforward case involving denial of prisoner visitation, for which there is ample legal authority.  The facts are also uncomplicated and should be readily discoverable.  Plaintiff has demonstrated an ability to present his claims, at least through the initial stage of the litigation, and his pro se filings are generally well-written. Although this case ultimately may turn on resolving the dispute between Plaintiff's version of events and Defendants' version of events, as well as a credibility assessment of witnesses if the case proceeds to trial, it has not yet progressed to that stage.  As a prisoner, Plaintiff understandably faces challenges representing himself, but "most indigent prisoners will face similar challenges."  *See Recca*, 859 F. App'x at 5 (citing *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018)).  Having carefully reviewed the

record and considered the factors outlined above, the Court will deny Plaintiff's request for the appointment of counsel without prejudice to reassertion. The Court will, however, "continue to be alert to the possibility that, because of procedural complexities or other reasons, later developments in the case may show either that counsel should be appointed, or that strict procedural requirements should, in fairness, be relaxed to some degree." *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993).

## V. CONCLUSION

Plaintiff's claims against NDCS and Defendants in their official capacities must be dismissed as they are barred by sovereign immunity. And, any claims for relief that Plaintiff asserts on behalf of his family members must be dismissed for lack of standing. Plaintiff's Complaint and Supplement sufficiently state claims for relief under *Manning* for violations of Plaintiff's First, Eighth, and Fourteenth Amendment rights based on the loss and suspension of visitation with his family, and those claims will be allowed to proceed to service of process against Defendants in their individual capacities. However, the Court cautions Plaintiff that this is only a preliminary determination based on the allegations found within the Complaint and Supplement. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

IT IS THEREFORE ORDERED that:

1. Plaintiff's First, Eighth, and Fourteenth Amendment loss of visitation claims against Defendants Michelle Wilhelm, Kimberly McGill, Cpl. Jessica Rhoades, and Cpl. Howard-Wilson in their individual capacities may proceed to service of process.

2. Plaintiff's claims against NDCS, his claims against Defendants in their official capacities, and any claims for relief asserted on behalf of Plaintiff's family are

dismissed without prejudice. The Clerk of Court is directed to terminate Nebraska Department of Correctional Services as a defendant to this action.

3. The Clerk of Court is directed to add "Cpl. Mary K Howard-Wilson, in her individual capacity,"[2] as a defendant in this action and to update the caption to reflect that all remaining Defendants are sued only in their individual capacity.

4. For service of process on Defendants Michelle Wilhelm, Kimberly McGill, Cpl. Jessica Rhoades, and Cpl. Mary K Howard-Wilson in their individual capacities, the Clerk of the Court is directed to complete a summons and USM-285 form for each Defendant using the following address:

> Office of the Nebraska Attorney General
> 2115 State Capitol
> Lincoln, NE 68509.

5. The Clerk of Court is further directed to complete a second set of summons and USM-285 forms for Defendants Kimberly McGill, Cpl. Jessica Rhoades, and Cpl. Mary K Howard-Wilson in their individual capacities using the following address:

> Nebraska Department of Correctional Services
> Nebraska State Penitentiary
> 4201 S. 14th Street
> Lincoln, NE 68502.

6. The Clerk of Court is further directed to obtain the last known address for Defendant Michele Wilhelm[3] from the Marshals Service for service of process on her in her individual capacity. Upon obtaining the necessary address, the Clerk of Court is directed to complete and issue a second set of summons and USM-285 forms for

---

[2] According to the State of Nebraska's online employee directory, Howard-Wilson's first name is "Mary K." *See* https://ne-phonebook.ne.gov/PhoneBook/welcome.xhtml (last visited Nov. 24, 2025).

[3] Wilhelm is no longer employed by NDCS. *See* State of Nebraska Online Employee Directory, https://ne-phonebook.ne.gov/PhoneBook/welcome.xhtml (last visited Nov. 24, 2025).

Defendant Michele Wilhelm in her individual capacity at the address provided by the Marshals Service and to file under seal any document containing Wilhelm's personal address.

7. The Clerk of the Court shall forward the summons forms and USM-285 forms together with sufficient copies of the Complaint, Filing No. 1, Supplement, Filing No. 8, and this Memorandum and Order to the United States Marshals Service.

8. The Marshals Service shall serve Defendants Michelle Wilhelm, Kimberly McGill, Cpl. Jessica Rhoades, and Cpl. Mary K Howard-Wilson in their individual capacities by "leaving the summons at the office of the Attorney General with the Attorney General, deputy attorney general, or someone designated in writing by the Attorney General, or by certified mail or designated delivery service addressed to the office of the Attorney General." Neb. Rev. Stat. § 25-510.02(1) (prescribed method for serving the State of Nebraska or any state agency); *see also* Federal Rule of Civil Procedure 4(j)(2); Neb. Rev. Stat. § 25-511 ("Any employee of the state, as defined in section 81-8,210, sued in an individual capacity for an act or omission occurring in connection with duties performed on the state's behalf, regardless of whether the employee is also sued in an official capacity, must be served by serving the employee under section 25-508.01 and also by serving the state under section 25-510.02.").

9. The Marshals Service shall also serve Defendants Michelle Wilhelm, Kimberly McGill, Cpl. Jessica Rhoades, and Cpl. Mary K Howard-Wilson in their individual capacities by certified mail or other authorized method of service at the addresses indicated above. See Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (prescribed method for serving an individual).

15

10. For service by certified mail or designated delivery service, the Marshals Service shall send the summons to Defendants within ten days of the Clerk of the Court issuing and forwarding the summons to the Marshals Service. See Neb. Rev. Stat. § 25-505.01(1).

11. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[4]

12. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

13. Plaintiff is hereby notified that failure to obtain service of process on the Defendants within 90 days of the date of this order may result in dismissal of this matter without further notice. A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

14. The Clerk of Court is directed to set a case management deadline in this case with the following text: **February 23, 2026**: service of process to be completed.

15. Plaintiff's request for the appointment of counsel is denied without prejudice to reassertion.

---

[4] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." See *Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

16. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this Court. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 25th day of November, 2025.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge